Harold Heath HILL; Harold C. Hill; Fred C. Hill, Appellees,

v.

BASF WYANDOTTE CORPORATION, Appellant.

No. 85–1162.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1985.

Decided Feb. 13, 1986.

Charles E. Carpenter, Jr. (R. Davis Howser, Richardson, Plowden, Grier & Howser on brief), for appellant.

William P. Donelan, Jr. (Donelan & Donelan on brief), for appellees.

Before SPROUSE and ERVIN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

MOTZ, District Judge:

This case has a long history. It involves damage to the 1977 soybean crop of Harold Heath Hill, Harold C. Hill and Fred C. Hill caused by the use of Basalin, a herbicide manufactured by BASF Wyandotte Corporation ("BWC"). The first trial resulted in the declaration of a mistrial when the jury was unable to reach a verdict. A second trial resulted in a judgment in favor of the Hills in the amount of $207,725. On appeal, this Court reversed that judgment, holding that the district court erred (a) in ruling that an oral representation made by a sales agent of BWC constituted an express warranty, and (b) in not giving effect to a disclaimer of consequential damages made by BWC. *Hill v. BASF Wyandotte Corp.*, 696 F.2d 287 (4th Cir.1982). We left open the question of how damages were to be measured. *Id.* at 292, n. 6.

Upon remand the district court certified the question of the proper measure of damages to the South Carolina Supreme Court. The Supreme Court ruled that the measure of damages in a case such as this is "the value ... [plaintiff's] crop would have had if the product [manufactured by defendant]

had conformed to the warranty less the value of the crop actually produced, less the expense of preparing for market the portion of the probable crop prevented from maturing." *Hill v. BASF Wyandotte Corp.*, 280 S.C. 174, 311 S.E.2d 734, 736 (1984). The case was then retried, and the jury returned a verdict in the amount of $148,625 in favor of the Hills. This appeal followed. On this occasion we affirm.

■ BWC first argues that the evidence was insufficient to sustain the jury's finding that the Basalin used by the Hills was defective. The standards governing sufficiency of the evidence questions have recently been recited by this court. *See Whalen v. Roanoke County Board of Supervisors*, 769 F.2d 221 (4th Cir.1985). "[W]hen a jury is called upon to determine causation, the inferences it draws to reach its verdict must be reasonably probable; mere speculation is insufficient." *Id.* at 224 (citing *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241–42 (4th Cir.1982)). However, the court may not pass on the credibility of witnesses or substitute its judgment of the facts for that of the jury. *Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 167 (4th Cir.1957). The party whose evidence is challenged must be given the benefit of all reasonable inferences from the evidence. *Id.; see also Abasiekong v. City of Shelby*, 744 F.2d 1055, 1059 (4th Cir.1984); 9 Wright and Miller, *Federal Practice and Procedure,* Section 2524 at 543–45 (1971).

In this case the evidence that the Basalin was defective was circumstantial. It was, however, sufficiently probative. The Hills demonstrated, by way of testimony, documentary evidence and aerial photographs, that they had different yields from different soybean fields on their farm even though the fields were both planted, cultivated and harvested in the same manner. One portion of the fields was treated with Basalin, the other with Treflan, another herbicide. The varieties of the beans planted in the fields were the same and weather conditions were comparable. Further, the Basalin was shown to have been applied correctly and the farming methods used on the different fields were the same. The

Hills' evidence also demonstrated why they were unable to produce at trial a sample of the Basalin in order to prove that its chemical properties might not have been as warranted by BWC. The can containing the Basalin had been buried underground after it was applied in accordance with BWC's own instructions on the label.

■ BWC next argues that the evidence was insufficient to support an award of damages. This argument is equally unavailing. Harold Heath Hill testified as to the number of bushels of soybeans which he estimated were lost because of the use of the Basalin. John W. Riser, the County Extension Agent for Richland County, confirmed that an experienced farmer such as H.H. Hill could reasonably estimate the probable yield of his crops by surveying them. H.H. Hill also testified to the price which the Hills would have received from the sale of the soybeans destroyed by the Basalin and to the difference in price which the Hills received from soybeans grown in the Basalin fields which were harvested but were of a lesser quality than the beans harvested from the Treflan fields. Finally, he testified as to the cost which the Hills would have had to incur to prepare for market the soybeans destroyed by the use of the Basalin. In sum, H.H. Hill's testimony addressed each of the elements of the measure of damages enunciated by the South Carolina Supreme Court in response to the question certified to it by the district court. He was subjected to close cross-examination on all of the matters as to which he testified, and the verdict—which was in a precise dollar amount substantially less than the Hills requested—demonstrated that the jury independently and carefully evaluated the evidence.

■ BWC finally contends that the district court erred in permitting Harold C. Hill and Fred Hill to be joined as plaintiffs after the evidence was closed. The reason for their joinder was that they owned part of the acreage on the Hill farm. From the outset of this protracted litigation it has been known that the farming of the Hills' land was a family operation, managed by Harold Heath Hill. He was the one responsible for actually running the farm, and he

had all of the contacts with the representatives of BWC. When he instituted this suit, he obviously did so on behalf of his father and his brother as well as himself. There can be no question from the evidence that they were fully aware of his actions and that they ratified them.

No unfair prejudice resulted to BWC from the joinder. BWC was aware long before trial of the precise ownership interests of each of the Hills in the fields in question. The addition of H.C. Hill and Fred Hill as plaintiffs simply conformed the pleadings to the evidence in accord with the spirit and the letter of Rules 15 and 17 of the Federal Rules of Civil Procedure. *See, e.g., Hess v. Eddy*, 689 F.2d 977 (11th Cir.1982); 6 Wright and Miller, *Federal Practice and Procedure*, Section 1541 at 637 (1971); *cf. Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301, 1309 (D.C.Cir. 1982); *Campus Sweater & Sportswear v. M.B. Kahn Construction Co.*, 515 F.Supp. 64 (D.C.S.C.1979), *aff'd* 644 F.2d 877 (4th Cir.1981). The joinder was therefore proper.

AFFIRMED.